



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

NASIM GIZI,

    Debtor,

_____/

DONALD LOZEN

    Creditor/Appellant,

v.

JOZA GIZI

    Appellee, and

GUARANTEE TITLE AND TRUST CO.,

    Claimant/Appellee.

_____/

Case No. 04-60267
HON. MARIANNE O. BATTANI

## OPINION AND ORDER REVERSING THE NOVEMBER 23, 2004, ORDER ESTABLISHING PRIORITY FOR DISTRIBUTION OF FUNDS

### I. INTRODUCTION

    Before the Court is Donald Lozen's December 6, 2004, appeal of an order issued by the Bankruptcy Court for the Eastern District of Michigan, Southern Division (Doc. # 1). The November 23, 2004, order granted Guarantee Title and Trust Company first priority, Joza Gizi second priority, and Donald Lozen third priority to the distribution of the net sale proceeds held by the Special Liquidating Trustee.

Debtor Nasim Gizi's father, Antoon Gizi, married Joza Gizi in March 1991. In July 1996, Antoon Gizi sought and was granted a default judgment of divorce. This default judgment was later set aside on December 15, 2000, because Joza Gizi did not receive notice, nor was she served with any divorce proceedings. In December 1996, Antoon Gizi purchased a house in Sterling Heights, Michigan ("the property"). That property is now the subject of this bankruptcy appeal.

The property was purchased in Antoon's name alone, using funds loaned from Ideal Mortgage Company ("Ideal"). Ideal took a security interest in the property to secure payment of the loan. Ideal recorded the mortgage, which listed Antoon Gizi as a single man, on January 7, 1997. In August of 1997, Antoon Gizi refinanced the property with North American Mortgage Company ("North American"). North American recorded its mortgage, which also listed Antoon Gizi as a single man, on November 14, 1997. Neither the Ideal nor the North American mortgage was signed by Joza Gizi. In October 1998, Antoon Gizi granted a quit claim deed to the property to his son, Nasim Gizi. The deed was recorded on October 7, 1999. The deed listed Antoon Gizi as a married man, but was not signed by Joza Gizi.

On November 10, 1999, Nasim Gizi refinanced the property with World Savings Bank ("WSB"). Again, Joza Gizi did not sign the mortgage nor authorize any action that would affect her dower rights. Guarantee Title and Trust Company, ("Guarantee"), as the title insurer for WSB, paid off the North America mortgage in the amount of $114,328.55.

In December of 1999, Antoon Gizi died, and Nasim Gizi proceeded to eject Joza Gizi from the property. On June 27, 2000, Debtor Nasim Gizi granted a mortgage on the property in the amount of $140,000 to Donald Lozen in order to secure the purchase price of a business

owned by Lozen. The mortgage was recorded on July 21, 2000. The bankruptcy court found that Lozen had no actual knowledge of the prior mortgage granted to WSB. The bankruptcy court also found that Lozen did not perform a title search to discover any previous mortgages or liens that would have priority over the mortgage given to secure the sale of his business to Nasim Gizi. The WSB mortgage was not recorded until February 28, 2001.

Nasim Gizi filed for Chapter 13 bankruptcy protection on September 19, 2002. Lozen was the only secured creditor to file and have approved a Proof of Claim with the bankruptcy court. A Special Liquidating Trustee was appointed by the bankruptcy court to sell and disburse the proceeds of the sale of the property. Three parties claimed the proceeds: Lozen claiming through his June 27, 2000, mortgage; Joza Gizi claiming through a dower interest, and; WSB claiming through its November 10, 1999, mortgage. The bankruptcy court entered an order on November 23, 2004, ranking payment of the proceeds in the following order: First, to WSB through equitable subrogation; Second, to Joza Gizi through her dower interest, and; Third, to Donald Lozen. Appellant Lozen challenges the application of equitable subrogation to refinance lenders, and specifically to WSB.

## II. STANDARD OF REVIEW

In bankruptcy cases, the district court is required to review the bankruptcy court's legal conclusions *de novo* and review factual questions on a clearly erroneous standard. In re Burns, 322 F.3d 421, 425 (6th Cir. 2003).

3

## III. ANALYSIS

### A. A Refinance Mortgage Lender is a "Mere Volunteer"

> Equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. It is well-established that the subrogee acquires no greater rights than those possessed by the subrogor, and that the subrogee may not be a "mere volunteer." Smith v. Sprague, 244 Mich. 577, 579-580, 222 N.W. 207 (1928); Foremost Life Ins. Co. v. Waters, 88 Mich.App. 599, 603, 278 N.W.2d 688 (1979).

Commercial Union Ins. Co. v. Med. Protective Co., 426 Mich. 109, 117, 393 N.W.2d 479, 482 (1986). Equitable subrogation is a doctrine that works, in this case, to give a refinance lender the same rights and remedies as a purchase money mortgage holder.

The Michigan Supreme Court has established a three-part test in order for equitable subrogation to apply:

> (1) a special relationship must exist between the client and the third party in which the potential for conflicts of interest is eliminated . . ., (2) the third party must lack any other available legal remedy, and (3) the third party must not be a "mere volunteer" i.e., the damage must have been incurred as a consequence of the third party's fulfillment of a legal or equitable duty the third party owed to the client.

Hartford Acc. & Indem. Co. v. Used Car Factory, Inc., 600 N.W.2d 630, 633 (Mich.1999).

The first criteria is not in dispute. However, as to the second criteria, WSB had an alternative legal remedy; namely, recording its mortgage in a timely fashion in order to secure its priority in the security interest. WSB failed to do this and now seeks equitable relief.

Next, "[t]o avoid being a mere volunteer, the party seeking subrogation must have made payment in order to fulfill a legal or equitable duty owed to the subrogor." In re Lewis, 398 F.3d 735, 747 (6th Cir. 2005). The Sixth Circuit Court of Appeals, in a recent decision, held that under Michigan law a refinance mortgage lender is a mere volunteer "because it ha[s] no legal or

4

equitable duty to repay the [original] loan." Id. Judge Carr, in his concurring opinion, went on to explain that because the refinance lender enters "into the contract for its own pecuniary gain" it volunteers to pay the debt. Id., at 749 (Carr J., concurring). Further, because the refinance lender is contractually obligated by the debtor to pay the previous loan, and not contractually obligated by the previous mortgage holder to repay the loan, the refinance lender is subrogated to the rights and duties of the debtor, not the previous lender. Id., (Carr J., concurring). Therefore, WSB, and Guarantee as the successor in interest, is a mere volunteer and equitable subrogation does not allow them to step into the shoes of Ideal to claim first priority.

Even if equitable subrogation were to apply to refinance lenders, equity would not favor Guarantee.

> Subrogration is granted, if at all, with due regard to the rights of others; and it will be refused where it is inequitable to grant it. Walker v. Bates, 244 Mich. 582, 222 N.W. 209 (1928). Evidence of the lapse of time must be considered with the facts and circumstances of the case to determine whether equitable subrogation should be enforced. Smith, 222 N.W. at 208.

In re Lewis, 398 F.3d at 747. WSB "is a sophisticated creditor with complete control over the recording of the signed mortgage." Id. Here, WSB did not record the mortgage for more than a year. "Its own negligence led to the dilemma created by the debtor's filing for bankruptcy." Id. Under these facts, it would be inequitable to now allow Guarantee to have its interest equitably subrogated in order to be first in line to collect the proceeds from the sale of the property. Guarantee argues that Lozen would receive a windfall if WSB is not subrogated to Ideal's status as a purchase money mortgage holder because Lozen did not investigate the state of Nasim Gizi's title. This ignores WSB's own culpability in this series of events. If WSB had recorded its mortgage at any time in the eight months between the time its mortgage was granted and Lozen

5

recorded his mortgage, there would be no dispute as to priority between Lozen and Guarantee today.

Guarantee also argues that because Lozen admits to secondary priority[1] to Joza Gizi's dower interest, and her dower interest would be subject to the priority of a purchase money mortgage, that Lozen would suffer no inequity by being subjected to World Saving Bank's super-priority. Even though Joza Gizi's dower interest would be subject to the priority of a purchase money mortgage, it is not necessarily equitable to subrogate a refinancing lender's rights and remedies to that of a purchase money mortgage holder in every case. Application of equitable subrogation "should and must proceed on the case-by-case analysis characteristic of equity jurisprudence." Hartford, 600 N.W.2d at 632. Merely because it would be equitable to subrogate one refinance lender's rights and remedies does not necessitate that all other subsequent lenders should in equity also be subrogated. In this case, even though it might be equitable to subrogate North American's rights and remedies ahead of Joza Gizi's dower interest, Guarantee should not benefit from its negligence simply because North American was not similarly negligent.

### B. Appellant Lozen Qualifies as a Good Faith Purchaser for Value Under Michigan's Race-Notice Recording Statute

Guarantee argues that if equitable subrogation does not apply, Lozen would not benefit under Michigan's race-notice statute[2] because he had notice of defects in Nasim Gizi's title. The bankruptcy court found that Lozen did not perform a title search or investigate in any other way

---

[1] See Creditor-Appellant Donald Lozen's Brief at 12; Motion for Distribution of Funds by Chapter 13 Trustee at 3.

[2] Michigan's recording act grants priority to the person who first records their interest in the property without notice of prior unrecorded claims. MICH. COMP. L. ANN. § 565.29. Thus, it is classified as a race-notice statute. See BLACK'S LAW DICTIONARY 1265 (7th Ed. 199).

the state of Nasim Gizi's title. Guarantee argues that because Nasim Gizi's father conveyed title to the property to him via quit claim deed, Lozen had constructive notice and/or inquiry notice of WSB's mortgage.

> The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

MICH. COMP. L. ANN. § 565.29. Guarantee's position is inapposite to Michigan statutory law.

Further, the bankruptcy court found that Donald Lozen "had no actual knowledge or notice of" WSB's mortgage. Evidentiary Hearing - Vol. IV at 12 (No.02-61849). Even if Donald Lozen had searched the records office he would not have received notice of WSB's interest in the property. Guarantee goes further and argues that the mere fact that Nasim Gizi received the property from his father via quit claim deed should have indirectly led to the discovery of WSB's secret lien. Both Michigan statutory law and the bankruptcy court's findings are contrary to Guarantee's position that Lozen had, or should have had, notice of WSB's interest.

Next, Guarantee argues that Lozen does not qualify as a good faith purchaser under the Michigan recording statute. This argument is also premised on Lozen's failure to inquire into the state of Nasim Gizi's title. Guarantee reasons that had Lozen investigated the title he would have discovered that Nasim Gizi received the property via quit claim deed. This, argues Guarantee, would require Lozen to further investigate and indirectly discover WSB's interest. Again, even if Lozen had investigated the title, WSB's secret lien would not have been discovered. Further, a quit claim deed is a valid conveyance under Michigan Law and "shall not affect the question of

7

good faith of such subsequent purchaser." MICH. COMP. L. ANN. § 565.29. Moreover, Lozen is not seeking to "void" WSB's mortgage on the property through the Michigan Recording Statute. MICH. COMP. L. ANN. § 565.29. Rather, Lozen is seeking priority over WSB's lien simply because WSB's interest was not recorded until well after Lozen recorded his mortgage.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the bankruptcy court's order of November 23, 2004, be and is hereby **REVERSED** and **REMANDED** with directions that the bankruptcy court enter an amended order in accordance with this court's opinion.

MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: **JUN 16 2005**

### CERTIFICATE OF SERVICE

Copies of this Order were mailed to Robert D. Buechler, John Sharp, and Darren Findling on this date by ordinary mail and electronic filing.

DEPUTY CLERK

8